```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2
 3   ------------------------------X
     ANTONIO YARBOUGH,            :   15-CV-00516 (MKB)
 4                                :
                   Plaintiff,     :
 5                                :
                 v.               :
 6                                :   December 12, 2016
     CITY OF NEW YORK, et al.,    :   Brooklyn, New York
 7                                :
                   Defendants.    :
 8   ------------------------------X
     ESTATE OF SHARIFF WILSON,    :   15-CV-04156-MKB (LB)
 9                                :
                   Plaintiff,     :
10                                :
                 v.               :
11                                :   December 12, 2016
     CITY OF NEW YORK, et al.,    :   Brooklyn, New York
12                                :
                   Defendants.    :
13   ------------------------------X

14     TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE STATUS CONFERENCE
               BEFORE THE HONORABLE LOIS BLOOM
15               UNITED STATES MAGISTRATE JUDGE

16   APPEARANCES:

17   For the Plaintiff:        EMMA FREUDENBERGER, ESQ.
     Estate of Wilson          Neufeld Scheck & Brustin
18                             99 Hudson Street
                               New York, New York 10013
19
                               ADAM D. PERLMUTTER
20                             Perlmutter & McGuinness, P.C.
                               60 Madison Avenue
21                             Suite 1800
                               New York, New York 10016
22

23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.
```

```
1                                                                    2

2

3     APPEARANCES (CONTINUED):

4
      For the Plaintiff:        ZACHARY MARGULIS-OHNUMA, ESQ.
5     Antonio Yarbough          Law Office of Zachary Margulis-Ohnuma
                                 260 Madison Avenue, 18th Floor
6                                New York, New York 10016

7                                PHILIP J. SMALLMAN, ESQ.
                                 32 Court Street, Suite 1702
8                                Brooklyn, New York 11201

9

10    For the Defendants:       PHILIP S. FRANK, ESQ.
      City of New York          EVIANA LINNEA FRANCES ENGLERT, ESQ.
11                               The New York City Law Department
                                 100 Church Street, Room 3-198
12                               New York, New York 10007

13                               ARTHUR G. LARKIN, ESQ.
                                 NYC Office of Corporation Counsel
14                               Special Federal Litigation Division
                                 100 Church Street- Rm 3-180
15                               New York, New York 10007

16
      Court Transcriber:        SHARI RIEMER, CET-805
17                               TypeWrite Word Processing Service
                                 211 North Milton Road
18                               Saratoga Springs, New York 12866

19

20

21

22

23

24

25
```

3

1  (Proceedings began at 1:37 p.m.)

2       THE CLERK:  Civil Cause For Status Conference,

3  Docket No. 15-CV-516, <u>Yarbough v. The City of New York, et</u>

4  <u>al.</u>; and Docket No. 15-CV-4156, <u>Wilson v. The City of New</u>

5  <u>York, et al.</u>

6       Will the parties please state your names for the

7  record.

8       MS. FREUDENBERGER [Telephonic]:  Good afternoon,

9  Your Honor.  Emma Freudenberger for the Estate of Wilson.  And

10 I have Rick Sawyer from my office, as well.

11      MR. PERLMUTTER [Telephonic]:  Your Honor, this is

12 Adam Perlmutter.  I'm also here on behalf of the Estate of

13 Wilson.

14      MR. MARGULIS-OHNUMA [Telephonic]:  Zachary

15 Margulis-Ohnuma, 260 Madison Avenue, Phillip Smallman, we're

16 both here for Antonio Yarbough.  Good afternoon, Your Honor.

17      MR. SMALLMAN [Telephonic]:  Good afternoon, Your

18 Honor.

19      MR. FRANK [Telephonic]:  Good afternoon, Your Honor.

20 This is Philip Frank, attorney for defendant.  With me on the

21 line is Ms. Englert, who you know, as well as senior counsel

22 Arthur Larkin, who put in a notice of appearance on

23 December 1st.

24      I just wanted to add, Your Honor, that in light of

25 Your Honor's order, I think the fact that Mr. Larkin is on the

4

1    case shows that my office is taking this case very seriously.

2    He's handled multiple wrongful conviction claims, including

3    one to verdict.  Thank you, Your Honor.

4              THE COURT:  Let's say hallelujah.

5              MR. LARKIN [Telephonic]:  Good afternoon, Your

6    Honor.

7              THE CLERK:  The Honorable Lois Bloom presiding.

8              THE COURT:  So good afternoon, everybody.  And I

9    hope everybody is well.

10             And welcome to the case, Mr. Larkin.

11             And this conference was scheduled because there were

12   a number of documents that had been withheld based on

13   privilege.  And I had those documents submitted to the Court

14   for in camera review.

15             There were two categories really of documents.  One

16   were the IAB documents related to the Papa case that had been

17   withheld on claims of privilege.  And the other were the Kings

18   County D.A. documents withheld on claims of work product.  And

19   so we're here today to discuss those matters and to see what

20   else is going on in the case.

21             So, first let me say that I have carefully reviewed

22   these documents.  And there are documents that are in these

23   group of documents which I believe the defendants will not

24   need to turn over.  I will uphold some of the asserted

25   privilege.  But there are others that I will direct be turned

5

1  over.

2          And I'm going to tell you to turn them over by

3  Thursday, Mr. Frank, Mr. Larkin, and Ms. Englert.

4          So the defendants turned over 62 pages of documents

5  to the Court that were labeled as "privilege."  And they bear

6  Nos. 10 through 72 in the privilege log that was submitted for

7  in camera review.  There's one discrepancy that I want to

8  start with to make sure that we had all the necessary

9  documents for in camera review.

10          So there were four documents that were listed in the

11  privilege log that -- again, this is the Kings County District

12  Attorney's Office documents are separate from the IAB

13  documents, so I'm now talking about the IAB documents -- and

14  the first four documents that were listed in the privilege log

15  that plaintiff [sic] referenced in their motion to compel were

16  not listed in the new privilege log that was dated

17  December 1st, 2016.

18          Mr. Frank, are you following?

19          MR. FRANK:  I'm not entirely sure --

20          THE COURT:  Okay.  So, I want you to look at

21  Exhibit B, which was the motion to compel.  So that is -- hold

22  on one second, it's Document 61 on the docket, Exhibit B.

23          MR. FRANK:  Yes, Your Honor.  I'm pulling that up.

24          THE COURT:  Thank you.

25          MR. MARGULIS-OHNUMA:  All right.  Exhibit B as in

6

1    boy.

2             THE COURT:  B as in boy, yes.  That was

3    Mr. Margulis, right?

4             MR. MARGULIS-OHNUMA:  Yes, it was.  Thank you, Your

5    Honor.

6             THE COURT:  Okay.  We're getting to know each other,

7    even by voice.

8             Go ahead.  So again, it's 56-2 because it was an

9    exhibit, and it's Page 2 of Document 56 -- I'm sorry, so why

10   was I saying 61?  Because I have 61 attached to 56.  So the

11   original was 56.  I'm sorry.

12            So I didn't mean to mislead you, Mr. Frank.  It's

13   Document 56, and it's 56-2 at Page 2.

14            MR. FRANK:  Your Honor, I could pull up another

15   copy.  Because I'm looking on ECF, and it's filed under seal,

16   so.

17            THE COURT:  You don't have access to it even though

18   you're a party?  I think we had tried to make it so you could

19   see anything even if it's under seal?

20            MR. FRANK:  I do not.  But I have -- I believe I

21   have another copy of it that I can pull up.

22            THE COURT:  Okay.  Very good.

23            Plaintiffs, I take it that you all have the

24   document?

25            MS. FREUDENBERGER:  We do, Your Honor.  And I'm

7

1    emailing it to Phil Frank now, so that he has it handy.

2              THE COURT:  Thank you.

3              MR. FRANK:  Thank you.

4              THE COURT:  Tell me when you're there.

5              MR. FRANK:  Your Honor, we decided to produce those

6    two -- first two categories of documents to plaintiffs, based

7    on Your Honor's ruling at the last conference --

8              THE COURT:  So, you're saying the top four, the

9    bottom two were a part of the in camera production.  But

10   there's the IAB closing report or 94983 for defendant

11   Williams; there are two of those.  And then there is the IAB

12   closing report; two of those.  So, you're saying those top

13   four documents were produced?

14             MR. FRANK:  That's correct, Your Honor.

15             THE COURT:  Thank you.

16             MR. FRANK:  They were produced on December 1st to

17   plaintiffs.

18             THE COURT:  Thank you.  That's what I was hoping was

19   your answer.  But I wanted to make sure because there was a

20   discrepancy between the privilege log that was submitted on

21   11/1 and the new privilege log that came with the in camera

22   production.  Okay.  So, that was the first.

23             So the two documents that have been withheld as to

24   the Papa file, and --

25             MS. FREUDENBERGER:  Your Honor, I'm sorry to

8

1   interrupt.  So unless we are looking at the wrong documents --

2   which I don't think we are -- it looks to us like the versions

3   of those two documents -- top two documents that you gave us

4   are heavily redacted; am I right about that?

5            MR. FRANK:  The top two documents are 31 pages.  I

6   believe that we redacted the Social Security numbers and

7   pulled dates of birth of police officers pursuant to the

8   Court's order at the last conference.

9            THE COURT:  Ms. Freudenberger --

10           MS. FREUDENBERGER:  Let me -- Your Honor, I will

11  double check as we go forward, and maybe it's a mistake on my

12  end.

13           THE COURT:  Well, I have them in front of me because

14  they were an attachment.  And that may have been prior to my

15  order.  But because I said that there was a confidentiality

16  order in place, and that the privacy asserted should not

17  derail the production, the City said that they would re-serve

18  and that they would only redact as to the information that I

19  permitted them to redact.

20           I think perhaps, Ms. Freudenberger, you're looking

21  at the redacted documents before that last conference, where

22  they were asserting HIPAA and other types of security

23  concerns?

24           MS. FREUDENBERGER:  You know, Your Honor, I don't

25  believe that I am.  I just pulled them up again, and it looks

9

1   like the review of testimony for the defendant officers in the

2   Papa case were not defendants in our case is all blacked out.

3   In other words, the memo that has the substance of the

4   conclusions reached on the basis of reviewing the testimony.

5          MR. FRANK:  Your Honor, if I may?  We supplemented

6   our in camera review with a second letter on December 1st.  It

7   had documents bearing Bates Stamp Nos. 72 through 76, which

8   showed what was being redacted in terms of the analysis by IAB

9   with reference to the letter from the now Honorable Paul

10  Crotty to the then-NYPD Commissioner --

11         THE COURT:  I see those.

12         MR. FRANK:  William Bratton --

13         THE COURT:  And what I'm asking is, so again, as to

14  the privileged matter that you have listed, this is on the

15  Papa file, the IAB closing report 0001 through 0004, which is

16  a letter from corp counsel Paul Crotty to NYPD commissioner

17  Bratton, I am ruling that that is covered by the attorney-

18  client privilege, and that you need not turn that over.

19         As to the memo, which was from Jeremy Travis, and

20  there are handwritten notes on the front of that memo -- and

21  he was at the time the deputy commissioner of legal matters

22  for the police department -- I am ruling that that need not be

23  turned over again based on attorney-client privilege.

24         The question that I have however, is it is not clear

25  what the basis for the -- I understand that the report, the

10

1  investigating officer's report that was attached to the Jeremy

2  Travis we're not confident we know exactly what the basis was.

3  I agree that the letter signed by Jeremy Travis would not need

4  to be turned over.

5          But I'm not sure what those reports that were

6  attached were attached to.  I understand that you have them

7  listed as privileged.  And they were in what was submitted to

8  me attached to the Travis' memo.  But I don't know what the

9  basis for those IAB documents -- I'm not sure I understand

10  what the City's argument is about those documents.

11          MR. FRANK:  When you're referring to those

12  documents, you're referring to the documents that would have

13  been attached to the Travis' memo; is that correct, Your

14  Honor?

15          THE COURT:  They have document stamp privileged 73

16  through 76; whereas the Travis' memo is privileged 0005.

17          MR. FRANK:  Your Honor, I think that the privilege

18  is twofold in 73 through 76.  One is, it's an analysis by an

19  IAB investigator which reiterate what was said in the letter

20  from corporation counsel Paul Crotty to NYPD commissioner

21  William Bratton.

22          So, I think by disclosing this analysis, it would

23  then have the effect of disclosing what Your Honor has already

24  decided is covered by the attorney-client privilege.  And then

25  the second argument we make, is that it's covered as

11

1   deliberative process privilege, Your Honor.

2          THE COURT:  So were 73 through 76 supposed to be

3   attached to the Travis' letter, or were they just another copy

4   of Crotty's letter?

5          MS. FREUDENBERGER:  Your Honor, I'm sorry to

6   interject.  Because we weren't provided with copies obviously

7   of what defendants have asked the Court to review in camera,

8   and there are no numbers on our privilege log, it's difficult

9   for us to understand what documents we're talking about.

10         I had thought we were talking about a memo from

11  Larry Kahn to IAB, urging them to review the officers'

12  testimony.  But it sounds like now we're talking about a memo

13  from Jeremy Travis.  Could either the defendants or the Court

14  clarify which document exactly we're talking about?

15         THE COURT:  Yes.  On 56-2, there are two documents

16  at the bottom.

17         MS. FREUDENBERGER:  Yes.

18         THE COURT:  One is from Paul Crotty.

19         MS. FREUDENBERGER:  Right.

20         THE COURT:  And the other is from NYPD deputy

21  commissioner, that happens to be Jeremy Travis.

22         MS. FREUDENBERGER:  Okay.

23         THE COURT:  That's what we're talking about.  And

24  you see it says attachment five pages?

25         MS. FREUDENBERGER:  I do.

12

```
 1          THE COURT:  So, that's what we're talking about.

 2          MS. FREUDENBERGER:  Okay.  And are the five pages

 3   one document, or is it multiple documents?

 4          THE COURT:  You know, that's what I'm asking Mister

 5   -- it's one doc -- you know, I'm asking these questions,

 6   because what's attached to the Travis' letter is literally

 7   four pages, not five pages.

 8          And so, I'm not sure because from the log, it said

 9   five pages attached.  And all that's attached to Travis is

10   four pages.  And we may need to go on hold for a moment, just

11   so I can try to figure out if there's any other reference.

12          So again, if I'm understanding what you're saying,

13   Mr. Frank, you're saying that the documents that I've just

14   said, the 73 through 76, were supposed to be attached to the

15   Travis' memo?

16          MR. FRANK:  Your Honor, I don't believe that's the

17   case.  The way that the -- I think those are -- we were given

18   a copy of the IAB file for Papa.  And --

19          THE COURT:  So can I just stop for a second?  Do --

20          MR. FRANK:  Sure.

21          THE COURT:  -- the documents 73 through 76 pertain

22   to redactions in some other privilege log?  Because I think

23   that might be what Ms. Freudenberger was saying, that she was

24   given copies of an investigator's report or an Internal

25   Affairs Bureau report that was so heavily redacted.
```

13

1          And then we took this turn and started looking at
2    where in the privilege log the documents were listed.  And
3    maybe you're giving me the unredacted copy of what they were
4    complaining had been redacted?  But if that's the case, I
5    don't have anything attached to the Travis' memo, where you
6    said that there were five pages.  But it could be that the
7    same letter from Crotty to Bratton was attached to the Travis'
8    memo?
9          MR. FRANK:  Yes.  Everything that Your Honor just
10   said is correct.
11         THE COURT:  Wow, I win the jackpot; I figured it
12   out.  No, so -- I'm sorry.  Let me just say, I am not
13   directing that the City needs to produce the letter from
14   Bratton to Crotty.  And I'm not directing that they have to
15   turn over the Travis' cover memo that attaches Papa.
16         But in what I was given, the Travis' memo was
17   attached to an IAB officer's report, or else it got mixed up
18   when it was being reviewed.  So I'm taking off that because it
19   made no sense.  And I am saying that you do not need to turn
20   over privilege 1 through 9 of the Papa file.
21         MS. FREUDENBERGER:  I'm sorry, Your Honor.  The
22   numbers don't mean anything to us.  We don't have any way of
23   knowing ---
24         THE COURT:  This is the letter --
25         MS. FREUDENBERGER:  -- the document that reflects

14

1    the numbering --

2           THE COURT:  -- the letter from -- this is the --

3    excuse me, Ms. Freudenberger.  This is the letter from

4    corporation counsel, Paul Crotty to NYPD commissioner William

5    Bratton dated May 11th, 1994.

6           Mr. Frank, did you give an updated privilege log to

7    plaintiffs?

8           MR. FRANK:  Yes, we did, Your Honor.

9           THE COURT:  So, this is dated December 1st, 2016?

10          MR. FRANK:  Correct, Your Honor.

11          THE COURT:  Ms. Freudenberger?

12          MS. FREUDENBERGER:  Your Honor, I understand that it

13   -- that your ruling is the defendants need not turn over the

14   letter -- the May 11th, 1994 letter from Paul Crotty to

15   William Bratton.  It's the numbering that is throwing me.

16          THE COURT:  Okay.  And so, the next thing on that

17   privilege log was literally a cover memo by Jeremy Travis

18   attached to the same letter from Crotty to Bratton.

19          MS. FREUDENBERGER:  In other words, the attachments

20   -- the five-page attachment listed on the original privilege

21   log --

22          THE COURT:  Is the letter from Crotty to Bratton,

23   which is a four --

24          MS. FREUDENBERGER:  Attached to the --

25          THE COURT:  Yes.  It's a --

15

1              MS. FREUDENBERGER:  -- Jeremy Travis' memo?

2              THE COURT:  -- four-page.  So, with the Travis'

3     cover memo, it's a five-page document.

4              MS. FREUDENBERGER:  I understand, Your Honor.  And

5     respectfully, Your Honor, we may very well just appeal that

6     decision.  And we also intend to seek a deposition -- we may

7     seek a deposition as to the author of that memo.  So would --

8              THE COURT:  You're going to depose Paul Crotty --

9              MS. FREUDENBERGER:  -- would the Court be willing

10    [inaudible] the basis --

11             THE COURT:  You're going to --

12             MS. FREUDENBERGER:  -- of that ruling on the record?

13             THE COURT:  -- excuse me, you're going to depose

14    Paul Crotty, who was the corporation counsel at the time that

15    this was written; that's what you're proposing to do?

16             MS. FREUDENBERGER:  I was proposing deposing Jeremy

17    Travis.

18             THE COURT:  Jeremy Travis did nothing except attach

19    the letter from Crotty to Bratton to a brief cover memo.  So

20    again, I don't think there is anything in those documents that

21    is not attorney-client privileged.  I have thoroughly reviewed

22    those documents.

23             And again, the Jeremy Travis was the deputy

24    commissioner for legal matters.  And he was just saying, I

25    attach.  That's basically what his cover memo says.  And it's

16

1   the same letter.  So, if you intend to do that, so be it.  But

2   I am clear that that is protected, and that the attorney-

3   client privilege for those materials will mean that they need

4   not be turned over.

5             Okay.  Now, we're turning to the next, which is the

6   longer list.

7             MS. FREUDENBERGER:  Your Honor, before we get there,

8   could the Court address the redactions to the IAB closing

9   reports and [indiscernible] -- testimony that we raised

10  initially?

11            THE COURT:  I don't really have that privilege log

12  in front of me.  Because I thought, as I said, that the papers

13  had gotten mixed up.  So, I'm not really sure as to those

14  redactions.  I know that some of it was based on attorney work

15  product.  But I'm not exactly sure what it was that we were

16  looking at in that five pages -- that four pages.

17            Mr. Frank?

18            MR. FRANK:  So, Your Honor, those four or five pages

19  were analysis [sic] by the IAB investigator referencing the

20  letter from Paul Crotty to William Bratton.  And --

21            THE COURT:  I think part of the problem --

22            MR. FRANK:  -- [indiscernible] --

23            THE COURT:  -- wait, one second.  I don't think that

24  we got the redacted documents to review.  I think I may have a

25  five-page of an unredacted document.  But I don't know that I

17

1  have what the redactions were.  I have the privilege log as to

2  what the redactions are.  But I don't physically have what the

3  redactions --

4        Unless it was in one of the documents you submitted

5  Ms. Freudenberger.

6        MR. FRANK:  Your Honor, this is Philip Frank for

7  defendants.  It might be difficult for the Court to see, we

8  have what was redlined -- but there's like a -- there is a box

9  that's around the paragraphs that were redacted which was most

10  of the document.  If Your Honor prefers, we can send you a

11  copy of the redline version, as well as the copy that -- the

12  actual redactions that we produced.

13        THE COURT:  I'm so sorry I didn't understand that

14  the box meant that that was what was redacted.

15        So, I'm frankly not prepared to speak to that today,

16  Ms. Freudenberger.  Because the box was around the entire

17  document.  And I thought that was just a document that was

18  being produced.  I didn't understand the box meant that that

19  entire document had been redacted.

20        MR. MARGULIS-OHNUMA:  Okay.  Yeah.

21        THE COURT:  So -- and again, that's -- I'm looking

22  at the privilege log that was served on December 1st, 2016.

23  And can you tell me where -- because the number at the bottom

24  of that document, as I said, Mr. Frank, is 73.  And it doesn't

25  correspond to the privilege log as to Papa file redactions.

18

1   Is it on a different list?

2            MR. FRANK:  And --

3            THE COURT:  Also, the privilege log on redactions

4   has many more documents than we received.  We only received

5   the in camera documents that were previously withheld.  We

6   didn't receive the ones that were redacted, which may be why

7   this is a bit of a mess.

8            So, I have reviewed all of the documents that had

9   been withheld.  But as to what was redacted, I don't have

10  these numbers.  And the one that I was citing you to is not

11  appearing on this log as to redactions.

12           MR. FRANK:  Your Honor, if I may?  This is Philip

13  Frank again.  Does Your Honor have a copy -- and I apologize

14  if we didn't provide it -- of the revised privilege log that

15  we provided to plaintiff on December 1st?

16           THE COURT:  I have what I think are multiple revised

17  privilege logs.  I have in my hand a privilege log as to KCDAO

18  file redactions, and privilege log as to Papa file redactions

19  dated December 1st, 2016.

20           But the numbers that were at the bottom of the

21  document that we've now -- at least for me -- it's been made

22  clear that the entire document was redacted because there was

23  a box around everything on that document.  That's not on that

24  list.  That was privilege 73 through 76.  And that's not on

25  this privilege log as to Papa file redactions.  And it's --

19

1  let me look.

2           MR. FRANK:  Your Honor, if I may clarify?

3           THE COURT:  Yes.

4           MR. FRANK:  The first two items in privilege log as

5  to Papa file redaction, which are document description, review

6  and analysis of testimony of non-party police officer.

7           THE COURT:  Yes.

8           MR. FRANK:  Those documents that we provided to the

9  court for in camera review as privilege 70 to 73 -- 73 to 76,

10 excuse me --

11          THE COURT:  Yes.

12          MR. FRANK:  -- are within those two -- that's what

13 those two privilege entries refer to.

14          THE COURT:  How would I ever know that?

15          MR. FRANK:  I apologize, Your Honor.  That was our

16 fault.

17          THE COURT:  So, what about the rest of the documents

18 that are listed where -- again, I was hopeful that the rest of

19 the documents didn't need to be provided, because they were

20 talking about non-party Social Security numbers or non-party

21 dates of birth.  So, is that why I didn't get all of those

22 documents?

23          MR. FRANK:  No.  Based on the Court's order, we

24 produced everything in the file, except for we redacted

25 non-party police -- or we redacted dates of birth and Social

20

1  Security numbers.  And if you look, our privilege log shows

2  that.

3           THE COURT:  I guess what I'm asking, Mr. Frank, is I

4  didn't know that 73 corresponded to what you have listed here

5  as your first two documents.  Okay.  73 through 76 does not

6  correspond with anything that you have listed on the privilege

7  log as to the Papa file redactions.

8           I want to make sure or assure the plaintiffs that

9  those documents which were produced -- but again, the

10 numbering is different -- I don't know that I got everything

11 on these lists as to your redactions.  I know that I got

12 everything as to what you withheld -- or I think I got

13 everything as to what you withheld.

14          MR. FRANK:  Your Honor, the only thing that we did

15 not provide to the Court were the remainder of the items on

16 the Papa log as the Papa file redactions after the first two

17 documents, because we only redacted the dates of birth and

18 Social Security numbers of officers.

19          THE COURT:  Okay.

20          MR. FRANK:  If Your Honor would like us to send that

21 to you, we could send that to you.

22          THE COURT:  No.  I just want to make sure that I

23 know what I'm doing here, and --

24          MS. FREUDENBERGER:  And, Your Honor, our position --

25 I mean, based on this conversation, and what we have is that

21

1   this clearly is not a proper privilege log as to the

2   redactions.  And on that basis, the defendants have waived the

3   privilege that they're asserting by redacting these documents.

4             THE COURT:  Very good.  You made your record.  I'm

5   trying to get to the bottom of this.  So, can we go back to

6   the top of the log where it says:  "Memo Re Triple Homicide

7   Attorney Notes."  I don't know where that is either.  If

8   you're saying that -- I see that you're saying that what I

9   have in my hand, which is privilege 73 through 76, as the

10  first two documents listed on the Papa file redactions.

11            You're saying everything else that was listed has

12  been turned over to the -- to the plaintiffs with only the

13  non-party police officer dates of birth or Social Security

14  numbers redacted.  Is that what you're saying, Mr. Frank?

15            MR. FRANK:  Yes, Your Honor.

16            THE COURT:  And, Ms. Freudenberger, or any other

17  plaintiff, do you want to jump in on that?

18            MS. FREUDENBERGER:  No, I think that's correct, Your

19  Honor.

20            THE COURT:  Okay.  Good.  So, what about that top

21  document that's listed on the privilege log dated

22  December 1st, 2016, which says:  "Memo Re Triple Homicide,"

23  and you're saying it's attorney work product?  Where was that

24  given to me?

25            MR. FRANK:  That's privilege 65 through

22

1    privilege 72, Your Honor.

2              THE COURT:  Okay.  Okay.  And that was given in a

3    redacted form?

4              MR. FRANK:  That was withheld, Your Honor.

5              THE COURT:  Right.  So, why is it on privilege log

6    as to KCDAO file redactions?

7              MR. FRANK:  Oh, I apologize, Your Honor, that's the

8    -- oh, no, I'm sorry, Your Honor.

9              THE COURT:  Yeah, there's something else.  Because

10   that's listed on the other December 1st of what was withheld.

11   That's listed as on the December 1st privilege log as to KCDAO

12   document withholding.  It's the last item, 65 to 72; an eight-

13   page letter from -- it's from Mark Hail to Kenneth Thompson;

14   not from Kenneth Thompson to Mark Hail.

15             MR. FRANK:  Yes, Your Honor.  Give me one moment,

16   while I see if I can find that document.

17             THE COURT:  It's supposedly a two-page document.

18             MR. FRANK:  Your Honor, I believe that we produced

19   that document with a very small redaction on a handwritten

20   note.  I don't think we produced it to Your Honor.  We can

21   produce it to Your Honor right away.  And I apologize for the

22   mistake on our part.

23             THE COURT:  Well again, I'm going to -- for all the

24   plaintiffs' counsel, let me just say -- the document that was

25   listed under privilege log as to Papa file redactions, again,

23

1   I am being completely clear with you that I did not understand

2   that the box meant that you got nothing.

3         And so, I have to review that again.  Because I was

4   not understanding that they were trying to withhold that

5   entire record based on either deliberative process, or

6   attorney-client, or official information privilege.  So those

7   documents, I'm not prepared to rule on today.

8         As far as the top document, which is a redaction he

9   says of some note, I'm not quite sure what that document is.

10  Maybe you know what that is; it's dated 6/18/92.

11        MS. FREUDENBERGER:  We know what the underlying

12  document is, Your Honor.

13        THE COURT:  So, is there an argument that that was

14  so heavily redacted that it needs to be reviewed?  They're

15  saying that what was taken off was attorney work product.  I

16  have no idea what that document is.  Do you want me to review

17  that document as well?

18        MS. FREUDENBERGER:  Well, I'd like you to review the

19  attorney work product, Your Honor.  I mean, that's what we're

20  arguing we're entitled to.  We have a clean copy of the

21  underlying document with no notes on it.  It's the attorney

22  work product that we [indiscernible] --

23        THE COURT:  So, I do want --

24        MS. FREUDENBERGER:  -- [indiscernible].

25        THE COURT:  So, I do want you to produce that to me,

24

1  Mr. Frank, so that I can review it --

2          MR. FRANK:  Yes, Your Honor.

3          THE COURT:  Okay.  So now, we can move over I

4  believe to all of the documents that were withheld.

5          And so, this you of course don't have, plaintiff's

6  counsel, and I understand that.

7          The first listed document is the grand jury minutes.

8          MS. FREUDENBERGER:  I'm sorry, Your Honor.  Are we

9  moving on from -- because I still have a question about the

10 Papa documents.  Would this be a good time to address it?

11         THE COURT:  What is it that you have is the

12 question?

13         MS. FREUDENBERGER:  The documents -- now that we

14 have more clarity on what the withheld documents are,

15 initially the documents that we received in the first round of

16 Papa disclosures, referred to a letter from Lawrence Kahn

17 referring the matter to IAB, and urging IAB to investigate the

18 officers who testified at the Papa trial for perjury.

19         In other words, a letter from Lawrence Kahn kicked

20 off the IAB investigation.  He wrote to IAB and said, you need

21 to look into these officers for lying under oath in the

22 [indiscernible] case.  And that document appears not to have

23 been listed on any privilege log.  And we don't have it.  And

24 it's critically important to our case.

25         MR. FRANK:  Your Honor, Mr. Frank, for defendants.

1   I believe that must have been an error.  Because the letter's

2   not from Lawrence Kahn, who's an executive [indiscernible] --

3          THE COURT:  That's correct.  Let me clear it up.

4   Lawrence Kahn's name is penciled in at the top of the letter

5   from Paul Crotty to William Bratton.  It's penciled in with a

6   phone number.  It's not from Lawrence Kahn.  It's from Paul

7   Crotty to commissioner William Bratton.  And that I have ruled

8   is attorney-client and will not be produced.

9          The same letter from Crotty to Bratton is attached

10  to the memo, which is just the attached letter type of memo,

11  from Jeremy Travis.  So, there is no letter from Kahn.  But

12  Kahn's name is penciled at the top of the letter from Crotty

13  to Bratton.  Does that answer the question that you asked,

14  Ms. Freudenberger?

15         MS. FREUDENBERGER:  That does answer the question,

16  Your Honor.  I'm still unclear about though why disclosure of

17  that letter to IAB wouldn't waive the attorney-client

18  privilege?

19         THE COURT:  Excuse me, from who to who?

20         MS. FREUDENBERGER:  If that letter is disclosed to

21  IAB, forwarded to IAB --

22         THE COURT:  I don't have that it's forwarded to IAB.

23  I have the deputy commissioner of legal matters.

24         MS. FREUDENBERGER:  I understand, Your Honor.  But

25  Mr. Frank was making the argument when we were talking about

26

1  the redactions on the IAB report that the reason for those

2  redactions is that they refer to the letter from -- that we

3  now know is from Paul Crotty to Bratton.

4           THE COURT:  Yes.

5           MS. FREUDENBERGER:  Clearly, that letter was

6  disclosed to IAB, or they wouldn't be referring to it in the

7  report.

8           THE COURT:  Yes.  Travis forwarded the letter to

9  IAB.  It's a cc on the Travis' cover memo.

10           MS. FREUDENBERGER:  Right.  And wouldn't that waive

11  the attorney-client privilege, Your Honor?

12           THE COURT:  I don't believe so.  I've considered

13  your argument.  I've read your cases that you've cited to me.

14  I believe that this letter from Crotty to Bratton is attorney-

15  client privilege.  Let's move on.

16           MS. FREUDENBERGER:  Your Honor, one more question?

17  Given that Mr. Kahn's name is penciled in on the top of the

18  memo, I just want to make crystal -- I want to seek

19  reassurance from the Court that we are not prohibited in any

20  way from reaching out to Mr. Kahn.

21           THE COURT:  I have no idea who Mr. Kahn.  Is he the

22  same person who's a Northern District judge now?

23           MS. FREUDENBERGER:  No, he's not, Your Honor.  He

24  was -- my understanding is he was second in command at

25  corporate counsel's office during this time.

1          THE COURT:  Well, again --

2          MR. LARKIN:  Can I address that?  This is Arthur

3   Larkin speaking.

4          THE COURT:  Yes, Mr. Larkin.

5          MR. LARKIN:  To the extent that plaintiffs want to

6   speak with Larry Kahn, I think they should do it through our

7   office, either -- I'm not sure exactly what Ms. Freudenberger

8   wants to do, whether she wants to have an informal meeting

9   with him, or some sort of interview.  I think that Mr. Kahn

10  would be entitled to representation in connection with any

11  proceeding related to this case, and he'd get it from

12  corporation counsel.  So, I think the way to proceed is for

13  counsel to direct any communications to us.

14         THE COURT:  Can I ask for both of you to, if you

15  need to discuss this matter further, to do it after this

16  conference?  I have a number of other cases that are on today.

17  And even though I always --

18         MS. FREUDENBERGER:  Well, Your Honor, I think the

19  clearest -- the probably the most -- the easiest thing to do

20  is to notice his deposition, which we're happy to do.  But we

21  can discuss it with Mr. Larkin after the conference.

22         THE COURT:  Look, I'm not going to tell you who to

23  depose or who not to depose.  Literally, his name and number

24  are written at the top of a letter.  It doesn't mean he ever

25  got the letter.  Maybe they didn't have a scrap of paper lying

1  around.  I have no idea.  You want to notice him for a

2  deposition, you've already been told by Mr. Larkin that you

3  have to do it through the corp counsel's office.  Let's move

4  on.

5         So, the Kings County District Attorney's Office

6  grand jury minutes.  I don't see why that's being withheld.  I

7  understand that there is a provision under the New York

8  Criminal Procedure Law, where they're supposed to turn first

9  to the state court.  But if that's something that's being held

10  by the City, I am directing that that be turned over.

11         MR. FRANK:  Yes, Your Honor.

12         THE COURT:  And we're looking now at the privilege

13  log, as to the Kings County District Attorney document

14  withholding.  And so again, I don't mean to give anybody short

15  shrift, but I have rulings with respect to these documents.

16  So the defendants, as I said, turned over 62 pages of

17  documents.  They are marked privilege documents 00010 to 00072

18  in the privilege log, that is dated December 1st, which was

19  provided to the Court with the documents for in camera review.

20         I have reviewed the documents multiple times, and

21  I've considered the parties' respective arguments.  And I

22  direct that defendants turn over the following documents,

23  which I found are not work product or factual work product.

24         Or if they are -- and again, this is in light of the

25  fact that the Kings County District Attorney is not a party to

29

1    this action.  That you start the analysis of work product

2    immunity with Rule 26(b)(3).  Non-parties can assert the

3    immunity granted in that rule.

4         Then you go to the Hickman v. Taylor case.  You look

5    at the three considerations:  whether it would alter attorney

6    behavior, sloth, or interfere with ongoing litigation; is

7    there a substantial need for the documents; and would there be

8    an undue hardship?

9         So, I've carefully reviewed those documents, and I

10   conclude that they constitute nothing more than factual work

11   product for the ones that I am directing to be turned over.

12   That plaintiffs have a substantial need for these documents,

13   and could not otherwise obtain them.

14        I find that as a matter of law the following

15   documents that I am directing defendants to produce, contain

16   no privilege or attorney work product, and that they should be

17   disclosed.  Okay.  So, if you'll follow along with me, I

18   believe that you should turn over:  20 through 29; 39 through

19   47; 51 through 53; 54; and 58 through 60.

20        The rest of the documents listed on the privilege

21   log are either core work product, or in the case of documents

22   that are privileged under 65 to 72, I find that they are

23   protected by the attorney-client privilege.

24        MR. FRANK:  Yes, Your Honor.

25        THE COURT:  Is there anything else that needs to be

30

1    addressed on behalf of plaintiffs today?

2             And I'm telling you to turn them over by Thursday.

3    And I would like to get the additional documents that I did

4    not get regarding the redacted Internal Affairs Bureau

5    documents.  And it's -- I believe 1427 through 1428.  I

6    believe those are the numbers you said.

7             MR. FRANK:  Yes, Your Honor.

8             THE COURT:  Anything else on behalf of plaintiffs --

9             MS. FREUDENBERGER:  Your Honor, my concern -- I'm

10   really not trying to make more work for everybody -- but my

11   concern is that because of the way the privilege logs have

12   been done, it's just impossible for us to follow and know what

13   documents we're talking about.

14            And the reason that I made those requests is because

15   I want to make sure that there's nothing else out there that's

16   fallen through the cracks.  So, we would respectfully request

17   the defendants redo their privilege log, provide us with a

18   privilege log if there's substantive material that reflects

19   the privilege -- although there shouldn't be, they could

20   redact it -- but so that we know which documents have been

21   provided to the Court, and we can understand the Court's

22   rulings as it -- you know, as they relate to those

23   documents --

24            THE COURT:  Well, if that's --

25            MS. FREUDENBERGER:  -- [indiscernible] --

31

1        THE COURT:  -- the case, I will direct that they

2    give an updated privilege log.  But because I wanted to get

3    you the documents sooner than later, I'd give him more time to

4    do that.  So, would you rather give him more time and get the

5    updated privilege log with the production?  Or would you

6    rather get him to turn over the documents that I directed him

7    to do by Thursday?

8        MS. FREUDENBERGER:  No.  I certainly rather have him

9    turn over the documents by Thursday.  I'm just clarifying that

10   we are going to get an updated privilege log down the line?

11       THE COURT:  Mr. Frank?

12       MR. FRANK:  That's no problem, Your Honor.

13       THE COURT:  Very good.

14       MR. FRANK:  And we can ever refer to the numbers of

15   the documents that were produced to the Court for in camera

16   review since they [indiscernible] --

17       THE COURT:  That would be -- that would be good,

18   because it is very confusing.  I'm not doubting --

19       MR. FRANK:  Yes.

20       THE COURT:  -- that it's confusing.  Because I have

21   the documents in front of me and it's confusing.

22       All right.  So, when can I get the -- there weren't

23   that many documents you needed to produce to me.  Can you do

24   that by Thursday as well, Mr. Frank?

25       MR. FRANK:  Yes, Your Honor.

32

1           THE COURT:  Okay.  And you'll give them the

2   documents by Thursday that I've directed you to turn over?

3           MR. FRANK:  Yes, Your Honor.

4           THE COURT:  And then you'll update the privilege

5   log; can you give me a date by which you'll able to do that?

6           MR. FRANK:  How about Thursday, the 22nd, Your

7   Honor?

8           THE COURT:  Any problem with that on plaintiffs'

9   behalf?

10          MS. FREUDENBERGER:  No, Your Honor.

11          THE COURT:  Very good.  Was there anything else that

12  needed to be addressed on behalf of plaintiffs?

13          Mr. Smallman, anything today?

14          MR. MARGULIS-OHNUMA:  I think he's no longer with

15  us, but on behalf of plaintiff Yarbough, no, thank you very

16  much.

17          THE COURT:  Thank you.

18          Anything further, Ms. Freudenberger?

19          MS. FREUDENBERGER:  I'm sorry, Your Honor.  When

20  could we expect a ruling on the redactions on the IAB

21  documents?

22          THE COURT:  I'm going to have to look at it before I

23  can tell you when I can rule on it.  How's that as my answer?

24          MS. FREUDENBERGER:  Fine.

25          THE COURT:  I can set another conference for us in

1  January, since we have been doing this every month.  And that

2  may -- you know, I'll rule on it.  It's not as cumbersome as

3  what I was last given.  But I still want to be able to review

4  what they give me.  And I do have other cases.

5          So, let's get our books, and get another date in

6  January.  How about January 4th, at 11:00, in the courtroom?

7          MR. FRANK:  I'm sorry, what was the date you said?

8          THE COURT:  January 4th, it's a Wednesday.

9          MR. FRANK:  Okay.

10         MS. FREUDENBERGER:  That's fine on our end, Your

11 Honor.  Thanks.

12         MR. PERLMUTTER:  I have a homicide sentencing.  But

13 I think that Ms. Freudenberger can stand up for me, Judge.

14         THE COURT:  Okay.

15         MR. LARKIN:  That works for defendants, Your Honor.

16         THE COURT:  Okay.  11:00, January 4th.

17         And again, by then, I expect that I'll have rulings,

18 Ms. Freudenberger.

19         I do want to start setting some deadlines here.

20 That was the whole point, we were trying to move through so we

21 could set deadlines.

22         I will put my rulings into a minute order.  But I'm

23 not going to do the analysis that was done by, for instance,

24 Judge Chin Lin.  I will cite to the cases that are on point.

25 I will say that none of the policies underlying the <u>Hickman</u>

34

1  doctrine were implicated in the documents that I decided to

2  turn over.  And again, I will look forward to speaking with

3  everybody on January 4th, at 11:00, in the courtroom about

4  what the next step will be.

5          MR. PERLMUTTER:  Your Honor, Adam Perlmutter here.

6  Because I do have this sentencing in a homicide case in the

7  Bronx, will I be able to dial in that day?

8          THE COURT:  Mr. Perlmutter, why don't you take care

9  of your client who's being sentenced.  You have all these

10  other good attorneys who could bring --

11         MR. PERLMUTTER:  I know.

12         THE COURT:  -- you up to speed, sir.

13         MR. PERLMUTTER:  I know.

14         THE COURT:  Okay?

15         MR. PERLMUTTER:  All right.  I'll do -- I appreciate

16  that, Your Honor.

17         THE COURT:  Okay.

18         MR. PERLMUTTER:  Thank you.

19         THE COURT:  Very good.  Anything else before we

20  adjourn?

21      [No response.]

22         THE COURT:  Then again, I'll --

23         MR. FRANK:  I just want to --

24         THE COURT:  -- I'll look forward to getting the

25  documents from you, Mr. Frank, by this Thursday; as will the

35

1    plaintiffs.  Send copies to everybody, and then you'll have an

2    additional week to get the revised privilege log to them.

3            And I will look forward to seeing everybody on

4    January 4th, at 11:00 a.m., in the courtroom.

5            Somebody wanted to chime in?

6            MR. FRANK:  And, Your Honor, Philip Frank for

7    defendants.  Just to confirm, the only documents that

8    defendants will be providing to you by Thursday are those two

9    pages, 11427 to 11428, with the unredacted note for in camera

10   review --

11           THE COURT:  Yes.

12           MR. FRANK:  -- and we'll be producing the remainder

13   of the documents to plaintiff that Your Honor ordered us to at

14   the --

15           THE COURT:  That's correct.

16           MR. FRANK:  -- [indiscernible].

17           THE COURT:  And then you'll get the revised

18   privilege log to them.  And I believe I found where on the

19   privilege log these went.  But since you're bringing an

20   additional document to me, if you can bring me -- with that

21   updated document -- what you're saying is the basis for the

22   privilege on the redactions of this four-page document, and

23   the redactions on the document that you will be producing on

24   Thursday, the 1427 and 1428; is that possible?

25           MR. FRANK:  Yes, Your Honor.

36

1          THE COURT:  Thank you.  and with that, I wish

2    everybody a healthy and happy holiday.  And again, please

3    speak to each other about what will come next, so that we're

4    prepared to go forward on January 4th.  Thank you.  Have a

5    good holiday.  Bye bye.

6          MR. FRANK:  Thank you, Your Honor.

7          MR. PERLMUT-TER:  Thank you, Judge.

8          MR. MARGULIS-OHNUMA:   Thank you, Your Honor.

9    (Proceedings concluded at 2:27 p.m.)

10                    *  *  *  *  *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

37

1          I certify that the foregoing is a court transcript

2     from an electronic sound recording of the proceedings in the

3     above-entitled matter.

4

5     _____

6                         Shari Riemer, CET-805

7     Dated:   December 14, 2016

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25